UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    CASE NO. 3:18-cr-209-J-34MCR

JIMMY RAY LIGHTSEY
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress

("Motion") (Doc. 24) and the Government's Response thereto (Doc. 26).  The

Motion was referred to the undersigned for a report and recommendation on May

23, 2019, and an evidentiary hearing was held on June 25, 2019.[2]  For the

reasons stated herein, it is respectfully **RECOMMENDED** that the Motion be

**DENIED**.

### I.      Introduction

In a two-count Indictment, Defendant is charged with possession of a

firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g) and 924(e), and

possession, with intent to distribute, of a controlled substance in violation of 21

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Crim.P. 59(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a).  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).

[2] The transcript of the hearing (cited as "Tr." followed by the appropriate page number) was filed on June 26, 2019.  (Doc. 34.)

U.S.C. §§ 841(a)(1) and (b)(1)(C).  (Doc. 1.)

On May 22, 2019, Defendant filed the present Motion, seeking to suppress all evidence obtained from the warrantless search of his vehicle on June 24, 2018.  (Doc. 24.)  The Government justifies the search and seizure based on the automobile exception and the plain view exception to the warrant requirement. Defendant, however, argues that (1) the officers lacked probable cause to search his vehicle because the incriminating nature of the items observed in plain view was not immediately apparent given that Defendant was arrested for driving on a suspended license and not for possession of contraband; and (2) the officers should have obtained a search warrant before entering his vehicle because Defendant was already in custody, the officers had full control of his vehicle, and there was no threat of the vehicle leaving.

## II.    Evidence Presented at the Evidentiary Hearing

### A.    Exhibits

The Court admitted the following exhibits into evidence:

- Government's Exhibit 1 (a photograph of 1866 West 45th Street and the adjacent vacant lot);

- Government's Exhibit 2A (a photograph (front view) of Defendant's vehicle (Toyota Venza), taken on June 24, 2018);

- Government's Exhibit 2B (a photograph (rear view) of Defendant's vehicle, taken on June 24, 2018);

2

- Government's Exhibit 2C (a photograph of the front row seats and center console of Defendant's vehicle, showing a clear plastic bag of marijuana in plain view, taken on June 24, 2018);

- Government's Exhibit 2D (a photograph of the driver's seat, floorboard, and turn signal of Defendant's vehicle, showing a firearm, taken on June 24, 2018);

- Government's Exhibit 2E (a photograph of the driver's seat (with the door open) and floorboard of Defendant's vehicle, showing a firearm, taken on June 24, 2018);

- Government's Exhibit 2F (a photograph of the firearm on the driver's floorboard in Defendant's vehicle, taken on June 24, 2018);

- Government's Exhibit 2G (a photograph of a clear plastic bag of marijuana in plain view at the center console in Defendant's vehicle, taken on June 24, 2018);

- Government's Exhibit 2H (a photograph of another clear plastic bag of marijuana found inside the center console of Defendant's vehicle, taken on June 24, 2018); and

- Government's Exhibit 2I (a photograph of a pill bottle and a clear plastic bag containing cocaine found in another closed compartment to the left of the steering wheel in Defendant's vehicle, taken on June 24, 2018).

### B.     Testimony

#### 1.     Detective Matthew Bolan

The Government's first witness was Det. Bolan, who has been with the

Jacksonville Sheriff's Office ("JSO") for almost twenty years.  (Tr. 6-7.)  During his

time with the JSO, Det. Bolan has conducted thousands of drug-related

investigations and has received training on how to recognize different types of

narcotics, including marijuana.  (Tr. 7-8, 23.)

On June 24, 2018, at approximately 5:30 p.m., Det. Bolan was on duty in

the West 45th Street and Moncrief area, which is known for drug and other

criminal activity.  (Tr. 8-9.)  As he was driving his unmarked vehicle, Det. Bolan

saw Defendant, through the front windshield of Defendant's car, sitting in the

driver's seat while his vehicle was parked at a Gate gas station.  (Tr. 8-9, 31, 40.)

Det. Bolan recognized Defendant from at least a dozen prior interactions,

including prior arrests.  (Tr. 9-10, 40 ("I looked through and said that's Jimmy

Lightsey.").)  Defendant was the only occupant in the vehicle.  (Tr. 30.)

Det. Bolan noticed that the window tint of Defendant's vehicle was too dark.

(Tr. 10.)  He decided to follow Defendant's vehicle as it was driving off the parking

lot.  (Tr. 10-12.)  Det. Bolan believed that Defendant's driving privileges had been

suspended, which was confirmed when he searched the National Crime

Information Center ("NCIC") database showing that Defendant was a habitual

traffic offender.  (Tr. 11, 16, 34; *see also* Tr. 25 (stating that Det. Bolan believed

Defendant to be a convicted felon).)  Det. Bolan called Officer Daigle to ask for

assistance in arresting Defendant for driving on a suspended license.  (Tr. 11-12,

16.)

Det. Bolan observed that Defendant parked his vehicle next to the vacant

lot on West 45th Street and walked over to the lot.[3]  (Tr. 11-13, 15-16, 36; Gov's

Ex. 1.)  Det. Bolan had visited the lot "numerous times" for drug activity, alcohol

complaints, and drug and gun-related arrests.  (Tr. 13.)  On that day, there were

eight to ten other people there.  (Tr. 15.)  No one approached or entered

Defendant's vehicle after he exited it.  (Tr. 16, 30.)

Det. Bolan observed Defendant and his vehicle from another parking lot

behind the trees.  (Tr. 16-17, 36.)  Less than a couple of minutes after Defendant

walked to the lot, Officers Daigle and Mitlyng arrived at the scene, walked up to

the "table"[4] where Defendant was standing, and arrested him for driving on a

---

[3] In the police report, Det. Bolan wrote that he observed Defendant exit the vehicle and walk to the vacant lot, and also that he checked Defendant's driving privileges, but omitted that he saw Defendant at the gas station and that he saw him driving the vehicle.  (Tr. 32-34; *see also* Tr. 41 ("[W]e just put the probable cause in [the arrest docket] and just cut to the chase. . . . [W]e just make it condensed[.]").)  Det. Bolan explained at the evidentiary hearing that the reason he checked Defendant's driving privileges was because he saw Defendant drive the vehicle and believed that his license was suspended.  (Tr. 34.)  Further, Det. Bolan's testimony at the hearing leaves no doubt that he observed Defendant drive the vehicle shortly before his arrest, regardless of whether such information was included in his police report.  (*See, e.g.*, Tr. 21, 32, 36.)  Moreover, the parties stipulated prior to the hearing that on June 24, 2018, Defendant was driving the vehicle in which JSO found a loaded firearm, narcotics, and other evidence in this case.  (Doc. 39.)

[4] This was not an actual table; instead, it might have been "a burn barrel" with "a
(continued...)

suspended license.  (Tr. 11-12, 16 ("I would definitely guess under a minute, but not long at all."), 17, 38, 42.)  Det. Bolan approached Defendant and the other officers.  (Tr. 17.)

Det. Bolan noticed car keys on the "table" directly in front of Defendant and retrieved them.  (Tr. 17, 38, 41.)  Defendant was escorted to a marked patrol car.  (Tr. 18, 38.)  When Det. Bolan walked over to Defendant's vehicle, he observed in plain view, through the windshield on the passenger's side, what he believed to be marijuana in a clear plastic bag.  (Tr. 18, 23.)  It was a green leafy substance, which led Det. Bolan to believe, given his previous experience and training, that it was marijuana.  (Tr. 23.)  It was clear and sunny outside.  (Tr. 18.)  Det. Bolan then walked around to the driver's side of Defendant's vehicle and observed a firearm on the floorboard.  (*Id.*)  He took pictures of both the marijuana and the firearm before entering the vehicle.  (Tr. 19, 22; Gov's Exs. 2C, 2D.)  While he was taking the pictures, Det. Bolan was standing on the curb or the sidewalk of a public street.  (Tr. 22, 24.)

Det. Bolan then entered Defendant's vehicle through the driver's door.  (Tr. 25 ("I don't remember if I had to unlock it or not.  I had the keys, but I went through the driver's door originally."), 38-39 (same).)  A search of the vehicle revealed more marijuana and empty plastic bags commonly used for packaging

---

4(...continued)
piece of plywood or plastic" placed on it.  (Tr. 17, 41; *see also* Tr. 48.)  The tabletop was about waist-high and the people were standing around it.  (Tr. 17.)

narcotics, which were located in the center console; as well as a pill bottle and a plastic bag containing cocaine, which were located in another closed compartment to the left of the steering wheel.  (Tr. 19, 28-29; Gov's Ex. 2H.) Once inside the vehicle, Det. Bolan photographed this contraband and took additional pictures of the contraband that he observed in plain view earlier.  (Tr. 19; Gov's Exs. 2E,[5] 2F, 2G, 2H, 2I.)  It was also verified that the window tint level of Defendant's vehicle was illegal.  (Tr. 29-30 ("Officer Daigle used his tint meter to test the levels, and the front window was 16 percent, which is too dark.  Then the front window strip on the front windshield was too far down past the line.").)

## 2.    Officer Tyler Mitlyng

The Government next called JSO Officer Mitlyng to the stand, who has conducted hundreds of drug-related investigations and has received training on how to recognize different types of narcotics, including marijuana.  (Tr. 42, 44.)

On June 24, 2018, Officer Mitlyng was on duty in Northwest Jacksonville, an area known for drug and other criminal activity.  (Tr. 44.)  At approximately 5:30 p.m., he was driving his marked patrol vehicle, when Det. Bolan asked for his assistance with a suspect known to be driving without a valid license.  (Tr. 45.)  Within minutes, Officers Mitlyng and Daigle responded to the West 45th

---

[5] Although it is difficult to see from the paper copies of Government's Exhibits 2D and 2E that there is a black firearm on the dark floorboard of Defendant's vehicle, the firearm was clearly visible when the pictures were zoomed in at the evidentiary hearing. (Tr. 26; Gov's Exs. 2D, 2E.)

Street and Moncrief area and arrested Defendant.  (Tr. 45-48, 53 (stating that it took Officer Mitlyng "[a] couple of minutes" to get to the scene and then only seconds to walk up into the lot).)  The vacant lot where Defendant was found was known for drug activity.  (Tr. 48.)

When Officers Mitlyng and Daigle approached Defendant, he was standing around a "table" with other individuals.  (Tr. 49.)  Det. Bolan and Det. Medlock walked up to them shortly thereafter.  (*Id.*)  When Det. Bolan walked up to the "table," he took Defendant's keys from the table, and walked over to Defendant's vehicle.  (Tr. 49, 55.)  Officers Mitlyng and Daigle escorted Defendant to a marked patrol vehicle and placed him inside.  (Tr. 54-55.)

Officer Mitlyng then walked over to Defendant's car.  (Tr. 55.)  From the curb side of Defendant's vehicle, Officer Mitlyng observed a clear plastic bag containing a green leafy substance located in the center console area.  (Tr. 50-51, 55; Gov's Ex. 2C.)  In light of his training and experience, Officer Mitlyng believed that the substance was marijuana.  (Tr. 51.)

## III.    Standard

### A.    The Automobile Exception

The automobile exception to the Fourth Amendment's warrant requirement "allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search."  *United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007) (citing *United States v. Watts*, 329

8

F.3d 1282, 1286 (11th Cir. 2003) (per curiam)).  "The requirement of mobility is satisfied merely if 'the automobile is operational.'"  *Id.*  "In addition, there is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure or that other exigent circumstances exist."  *Id.* (internal citations and quotation marks omitted).  "[T]he requirement of exigent circumstances is satisfied by the 'ready mobility' *inherent* in all automobiles that reasonably appear to be capable of functioning."  *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990) ("[T]he ability of a vehicle to become mobile is sufficient to satisfy the exigency requirement. . . . Put differently, the mobility of an automobile is exigency enough."); *see also Watts*, 329 F.3d at 1285-86 (stating that "in light of the fact that the defendant was driving his automobile at the time of his arrest, a finding of probable cause 'alone satisfies the automobile exception to the Fourth Amendment's warrant requirement'") (internal citations omitted).

Probable cause "exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle," *Lindsey*, 482 F.3d at 1293 (internal citations and quotation marks omitted), "including, for example, where contraband is in plain view in the vehicle," *United States v. Gant*, 756 F. App'x 898, 899 (11th Cir. 2018) (per curiam) (citing *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009) (holding that a warrantless search of a vehicle was lawful where the officer observed contraband on the floorboard of the passenger seat in plain view when

defendant exited the vehicle)).

### B.    The Plain View Exception

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant."  *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971).  The plain view doctrine has been applied, *inter alia*, "where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object."  *Id.* at 466.

"The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent."  *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (internal citations omitted), *cert. denied*, 549 U.S. 1137 (2006).  In addition, "the searching agents must inadvertently discover the disputed evidence."  *United States v. Slocum*, 708 F.2d 587, 604 (11th Cir. 1983).

"'Plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment.[6] 'Plain view' is perhaps better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior

---

[6] The police "may come across an item while acting pursuant to some exception to the warrant clause."  *Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983).

justification for an officer's 'access to an object' may be."  *Texas v. Brown*, 460

U.S. 730, 738-39 (1983); *see also Smith*, 459 F.3d at 1290 ("The plain view

doctrine allows police officers to seize any contraband in plain view if the officers

have a right of access to the place where the contraband is located.").

The "immediately apparent requirement" is satisfied when there is

"probable cause to believe that the object in plain view is contraband."  *Smith*,

459 F.3d at 1290 (citations omitted).  Probable cause "merely requires that the

facts available to the officer would 'warrant a man of reasonable caution in the

belief' . . . that certain items may be contraband . . . or useful as evidence of a

crime; it does not demand any showing that such a belief be correct or more likely

true than false."  *Brown*, 460 U.S. at 742; *see also Smith*, 459 F.3d at 1292

(stating that "probable cause is not based on knowledge of legal technicalities,

but rather on whether there is a reasonable ground to believe that a crime has

been committed").  For probable cause to exist, the officers are not required to

know with certainty that a certain item is illegal contraband.  *Slocum*, 708 F.2d at

605; *see also Smith*, 459 F.3d at 1291 (stating that in order for probable cause to

exist, the officers need not be correct in their assessment; rather, "we are only

concerned with what a 'reasonable and prudent' officer might have perceived and

inferred").

"[A] law enforcement official making evaluations is not bound to the

objective knowledge of a reasonable person.  Such an agent may rely on his

special experience and knowledge in determining whether, for example, reasonable suspicion or probable cause exists."  *Slocum*, 708 F.2d at 605; *see also Gant*, 756 F. App'x at 900 (stating that "a police officer may draw inferences based on his own experience in deciding whether probable cause exists") (quoting *Ornelas v. United States*, 517 U.S. 690, 700 (1996)).

## IV.    Discussion

The undersigned agrees with the Government that the warrantless search of Defendant's vehicle and the seizure of contraband from the vehicle were lawful under the automobile and the plain view exceptions to the Fourth Amendment's warrant requirement.  The automobile exception allowed the officers to search Defendant's vehicle because it was readily mobile and there was probable cause to believe that contraband would be found inside the vehicle.  The vehicle was operational because Defendant was observed driving it from the gas station to the vacant lot where he parked just minutes prior to his arrest.  (Tr. 11-13, 15-16, 21, 32, 34, 36.)  Also, the parties stipulated that Defendant was driving the vehicle on June 24, 2018.  (Doc. 39.)

Additionally, there was probable cause to search the vehicle based on Det. Bolan's observation of contraband in plain view inside the vehicle.  *See Gant*, 756 F. App'x at 899 (stating that there is probable cause to search a vehicle "where contraband is in plain view in the vehicle"); *Spoerke*, 568 F.3d at 1249 (holding that a warrantless search of a vehicle was lawful where the officer observed

12

contraband on the floorboard of the passenger seat in plain view when defendant exited the vehicle).  Prior to entering the vehicle, Det. Bolan observed (and photographed) in plain view, through the windshield, a clear plastic bag of a green leafy substance, which he believed, based on his prior experience and training, was marijuana,[7] in the center console of Defendant's vehicle and a firearm on the floorboard of the driver's side.  (Tr. 18-19, 22-23; Gov's Exs. 2C, 2D.)  Under these circumstances, "it was objectively reasonable to believe that it was fairly probable that more drugs could be found in the area where [Defendant] had just previously occupied."  *Gant*, 756 F. App'x at 901.

Defendant argues that the officers should have obtained a search warrant before entering his vehicle because he was already in custody, the officers had full control of his vehicle, and there was no threat of the vehicle leaving. However, it is well-settled that the standard for mobility under the automobile exception is whether the vehicle is "operational," regardless of who may "control" it.  Indeed, as the Government states, it is hard to imagine a situation in which officers would be able to conduct a warrantless search of a vehicle without having full control of the vehicle.

Here, it is uncontroverted that Defendant's car was operational.  Thus, Defendant's arrest or the taking of his car keys had no effect on whether the

---

[7] Officer Mitlyng also observed, from the curb side of Defendant's vehicle, the clear plastic bag with the green leafy substance, which he also believed was marijuana, in the center console area in plain view.  (Tr. 50-51, 55.)

vehicle was "operational" for purposes of the automobile exception.  *See Lindsey*, 482 F.3d at 1293 n.7 ("[T]he justification to conduct . . . a warrantless search does not vanish once the car has been immobilized.  A vehicle lawfully in police custody may be searched on the basis of probable cause to believe that it contains contraband, and there is no requirement of exigent circumstances to justify a warrantless search.") (internal quotation marks and citations omitted); *see also United States v. Gant*, Case No. 8:16-cr-531-T-30TBM, 2017 WL 4404445, *5 (M.D. Fla. Sept. 6, 2017) (report and recommendation adopted by 2017 WL 4343775 (M.D. Fla. Sept. 29, 2017)) (stating the defendant was already in custody when the search of the vehicle occurred).  "[R]equiring police to obtain a warrant once they have obtained a first-hand perception of contraband, . . . or incriminating evidence generally would be a 'needless inconvenience' . . . that might involve danger to the police and public."  *Brown*, 460 U.S. at 739; *see also Gant*, 2017 WL 4404445 at *5 n.7 (stating that the "entry into the vehicle to seize the firearm was entirely reasonable and justified" if for no other reason than officer safety).  Thus, the automobile exception allowed the officers to search Defendant's vehicle without a warrant.

Further, the plain view doctrine allowed the officers to seize the evidence from Defendant's vehicle without a warrant because (1) the officers were lawfully located in the place from which the contraband was plainly viewed and had a lawful right of access to the contraband, (2) the incriminating character of the

objects in plain view was immediately apparent because there was probable cause to believe that they were contraband, and (3) the contraband was discovered inadvertently.  *See, e.g.*, *Smith*, 459 F.3d at 1290; *Slocum*, 708 F.2d at 604.

First, the officers were lawfully located in the place from which the contraband was plainly viewed.  *See, e.g.*, *Gant*, 756 F. App'x at 901 ("The first prong of the test was satisfied because the officers were lawfully on patrol in a public area and, from their standing position next to the car with its interior lights on, they could see into the front seat's cup holder, which held a firearm."); *Gant*, 2017 WL 4404445 at *3.  Det. Bolan testified that he was standing on the curb or the sidewalk of a public street when he observed and photographed the marijuana and the firearm in plain view inside Defendant's vehicle.  (Tr. 22, 24.) Officer Mitlyng was also standing on the curb side of Defendant's vehicle when he observed the marijuana in plain view in the center console area.  (Tr. 50-51, 55.)  Also, because the automobile exception applies, the officers had a lawful right of access to the contraband.  *Gant*, 756 F. App'x at 901.[8]

---

[8] Defendant argues that the officers did not have a lawful right of access to the objects observed in plain view, because Defendant had already exited the vehicle and it was allegedly locked.  (*See* Tr. 60-62.)  Det. Bolan testified that he did not remember whether the vehicle was locked, but he "went through the driver's door originally."  (Tr. 25, 38-39.)  Again, the vehicle was operational, regardless of whether it was locked or not.  As stated earlier, the fact that Defendant had left the vehicle and was already in custody at the time the officers observed the objects in plain view is insignificant for purposes of the automobile exception.  *See Gant*, 2017 WL 4404445 at *5.  The

(continued...)

Second, the incriminating character of the objects was immediately apparent.  As to the green leafy substance, both Det. Bolan and Officer Mitlyng testified that based on their extensive experience and training related to narcotics, they believed that the clear plastic bag in the center console area contained marijuana.  (Tr. 23, 50-51, 55.)  As such, there was probable cause to believe that the vehicle contained marijuana, a controlled substance pursuant to Fla. Stat. § 893.13(6)(a).  *See Gant*, 756 F. App'x at 901 ("[W]e do not require that the officer 'know with absolute certainty' that the substance in the clear bag was crack cocaine and allow for the 'common sense view to the realities of normal life' to justify probable cause."); *United States v. Wright*, 615 F. App'x 565, 566-67 (11th Cir. 2015) (per curiam) (holding that a warrantless search of a vehicle was lawful after an officer observed in plain view a pill bottle containing what he believed to be an illegally possessed controlled substance, because "[t]he discovery of the controlled substance justified the subsequent search of the immediate area of the vehicle for additional evidence of criminal activity"); *United States v. Vargas*, 643 F.2d 296, 297 (5th Cir. 1981) (per curiam) (holding that the

---

[8](...continued)
officers were allowed to search Defendant's vehicle without a warrant because there was probable cause to believe that it contained contraband, and "there is no requirement of exigent circumstances to justify a warrantless search."  *Lindsey*, 482 F.3d at 1293 n.7.  "[R]equiring police to obtain a warrant once they have obtained a first-hand perception of contraband . . . might involve danger to the police and public," *Brown*, 460 U.S. at 739, particularly where, as here, the officers observe a firearm, *Gant*, 2017 WL 4404445 at *5 n.7, and are aware of Defendant's criminal history and presence of other individuals in an area known for drug and other criminal activity.

officers' observation of plastic bags containing what appeared to be cocaine in plain view inside a vehicle authorized the warrantless search of the occupants).

As to the firearm, Det. Bolan knew that Defendant was a convicted felon. (Tr. 25; *see also* Tr. 11, 16, 34.)  He recognized Defendant at the gas station from at least a dozen prior interactions, including prior arrests, and a search of the NCIC confirmed that Defendant was a habitual traffic offender, *i.e.*, a felon. (Tr. 9-11, 16, 25, 34, 40.)  Under the totality of the circumstances, a reasonable officer would be warranted in believing that the firearm was contraband subject to seizure under the plain view doctrine.  *See, e.g.*, *United States v. Robinson*, Crim. No. 14-0299-WS, 2015 WL 468467, *2-3 (S.D. Ala. Feb. 4, 2015) (stating that in light of defendant's criminal history, specifically his status as a convicted felon, the firearm was contraband subject to seizure under the plain view doctrine); *see also United States v. McDaniel*, 550 F.2d 214, 215, 218 (5th Cir. 1977) (holding that a warrantless search of a vehicle was lawful when an officer observed, through the open door of the vehicle, a partially covered pistol in plain view on the front seat of the vehicle while issuing a citation to the driver, because the officer "had a right to be where he was when he saw the pistol, a weapon commonly used by criminals, in plain view").[9]

---

[9] The undersigned rejects Defendant's argument that the incriminating nature of the narcotics and the firearm in plain view was not immediately apparent given that he had been arrested for driving with a suspended license and not for possession of contraband.  As the cases cited by the parties illustrate, it is not uncommon for law

(continued...)

Finally, the contraband was discovered inadvertently after Defendant was arrested for driving on a suspended license.  It is undisputed that the officers were lawfully located outside of Defendant's vehicle when they observed objects in plain view inside the vehicle, which they reasonably believed to be contraband. The automobile and plain view exceptions authorized the warrantless seizure of the marijuana and the firearm in plain view in Defendant's vehicle, as well as the additional contraband that was found inside the vehicle on June 24, 2018.  *See, e.g.*, *Gant*, 756 F. App'x at 900; *Wright*, 615 F. App'x at 566-67; *Lindsey*, 482 F.3d at 1293; *Vargas*, 643 F.2d at 297.

## V.    Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that the Motion (**Doc. 24**) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida, on July 3, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

---

[9](...continued)
enforcement to issue traffic citations or arrest defendants for unrelated offenses and then conduct warrantless searches after observing contraband in plain view inside a vehicle.  *See, e.g.*, *Gant*, 756 F. App'x at 900 (dismissing defendant's argument that probable cause was lacking because defendant "was arrested only for assault on an officer," while "the subsequent search of his person found 9.6 grams of marijuana, 15 hydrocodone pills, and $1,192 [] in cash").

Copies to:

The Hon. Marcia Morales Howard
United States District Judge

Counsel of Record